Next case is RESEARCH RESOURCE CONSERVATION GROUP v. United States, 2011, 5063. Mr. Rich, when you are ready. May it please the Court, I appreciate the opportunity to be here in Portland, Oregon today, Your Honors. Me too. This Honorable Court essentially anticipated this appeal when it decided the jurisdictional issue in this case. As Judge Dyke indicated, in the last paragraph of the opinion before the conclusion, you declined to construe the statute for the first time on appeal. You would note that even if the government's construction were correct, it would not necessarily defeat RCG's claim, etc. So we are back here once again for this Court. And this case boils down to two basic issues. Was the Department of Navy correct when it interpreted 10 U.S.C. section 6976? And if it was correct, did the Department have an obligation to advise RCG that its effort to lease the property would be futile because its proposal would be considered non-responsive? There's a sub-question there, which is, does a fair and honest review of the proposed proposal extend to the conduct which occurred here before the submittals? When you look back at this case, it really presents a unique set of facts. We could find no case which had a factual pattern like this one. From 2005 to 2007, the Navy set out on a course of action to lease the property. Let me help you focus on the issue here. When I first read the briefs in this case, I thought, well, you're clearly wrong. You don't have a case here at all. But the second time I read them, I thought, well, maybe that's not right. Because one thing you point out is that under the regulations, interest in the real estate appears to include a lease. And it can't be, since the statute here permits leasing, that it's adopting that because it would prohibit a lease of real property as well as a sale. And I wonder whether under the Mineral Leasing Act, whether it isn't the case that it's contemplated that when the government has a piece of property with oil in it or coal in it or sand and gravel, whether the transaction isn't set up as a lease that enables the extraction of the minerals. And that the whole premise of the Mineral Leasing Act is that you can have a lease for extraction of sand and gravel and that allowing leases under this statute allows the mineral lease. Well, there is a prohibition in section 6976. That prohibition basically says that the real property consisting of 875 acres, i.e. the dairy farm, and it says this, should not be declared excess property. And the question is what does that mean? It shouldn't be transferred. But then it's a lease. And what you're arguing is that a lease for the extraction of minerals is within the lease in the statute, right? That's correct. That's typically the way these minerals are handled. Under the Mineral Leasing Act, is that what happens? That there is a lease of the property that allows the extraction of the minerals? Yes. That's typically the way I represent most of the mining interests in Maryland and sand and gravel mining interests, and there are typically always leases. And lease payments include royalties. But the statute 6976 says that real property may not be otherwise disposed of. Real property is declined by the regulation as including embedded gravel, sand, or stone. And what you wanted to do was to dispose of it, take it, and dispose of it. Why wasn't it included? Because when you look at that statute, you look at that statute, at first glance, it cries out at you, and you go back and look at the history of that statute, that Congress was intending to preserve the dairy farm, the fee, the fee interest. It was not intending to protect against alienation of a particle of soil or a particle of sand or a particle of gravel. But the Notice of Availability for Lease says that the property must be maintained. How can it be maintained if it is stripped? Well, it's supposed to be maintained in its agricultural rule and agricultural manner. Rather than as a mine. Well, actually, Your Honor, a mine is considered an agricultural use in Maryland. Because mining is authorized as a special exception in almost every jurisdiction in Maryland as a special exception of conditional use in an agricultural zone. Mining is considered to be an agricultural act in Maryland. As I say, I represent most of the mining interest in the state. And I think, hopefully Judge Dike thinks the same, when you look at this statute, it was supposed to allow a lease. And the prohibition basically applies to prohibiting an alienation or accessing this property and transferring the property to a third person. Otherwise, why does it say 800? Why does it say in all the legislation, the dairy farm, including bracket 875 acres? It looks to the fee. It's basically saying... There are a number of steps to the analysis. The problem that I have with the government's argument is they're saying, let's look to these regulations and since the regulations say that sand and gravel is part of the real estate, we win. But it seems to me that's a difficult argument for them to make, since leasing is considered to be real property, an interest in real property, and the regulations as well. It can't be that the answer lies in the regulations, which at the same time say sand and gravel is a real estate and also leasing. They basically claim that this authorized leasing, but it didn't authorize leasing for sand and gravel purposes. They make that determination. I don't want to argue their case for them, but that's what their brief says and that's what their determination is. They've argued throughout. But the important point in this case, what makes this case quite different, is that from 2005 to April of 2007, I believe the Navy agreed. The Navy agreed that this could be leased and it could be leased for mineral purposes. Well, when you say the Navy agreed, the Navy didn't ever explicitly agree to that proposition, if I understand the facts. I don't mean to argue with the court, but when you go to the Navy and you visit the site and you come back and say, look, I want to dig some holes in this. I want to geologically explore it. I want to spend a couple hundred thousand dollars putting holes in the ground to determine whether or not there's sufficient commercial material there. And the Navy gives you a written permission and says, yes, you can do it. I think that's pretty close to supporting the concept that you can mine the property. It doesn't say yes, but it's pretty close to saying yes. The statute, if I recall, not only says that the property should be maintained in a rural and agricultural nature, but there is at least a reference to the preference being given to persons who will continue dairy operations on the property, right? Yes. So if the Navy had decided, well, in exercising this congressionally mandated preference, we're just not going to allow a substantially contrary use such as mining to be considered. We'll just take it off the list. We're not going to look at any mining applications. Why would that be contrary to the statutory mandate? Well, they didn't do that. They didn't take it off the list. It wasn't a forbidden use. Well, they ultimately took you off the list. They took it off the list after half a million dollars was spent. But suppose that nothing had happened prior to the submission. The submission is made, and they say, you know, we looked at the statute, and we've considered the various competing offers, and it's true that the mining industry application, resource conservation application, would pay us the most money. But given what Congress had told us, we think that we're not going to allow that use, and therefore we'll pick Anne Arundel County's application. Why wouldn't that be impermissible? Well, I think there's two reasons. I think it's contrary to the intent of the statute. I think that's impermissible. But getting back to the second argument we made here, I think if you go to this whole concept of what's fair and honest dealing, good faith dealing in making of contracts and affecting contracts, you go to that premise, do it up front. I think there are only six bidders in this matter. Two of them were mining companies. I was not involved in the details or in this because I represented both companies. But the point of the matter is there wasn't a whole lot of people that were bidding in this thing. And if you're going to make that determination, make it so that people don't expend a half million dollars in trying to accomplish something that they're going to deny. You could have asked in advance, is mining going to be permitted? Yes, they could have asked. They could have asked. Just like there were about a dozen questions asked, right? There were some questions asked, but there's two answers to that. Just like the lower court said as a lawyer, if you're competent, you should be able to read Section 6976, and you should know that the construction has changed. I mean, that's what the court argues or stated below. I take somewhat offense to that. But the point of it is if we had not asked to explore the property, if the client had not asked to explore the property and gotten written permission to do so, yes, then a bell might go off, and you would ask. But why would you ask when the Navy has set off on this course, and they've gone along with you and gone along with you and gone along with you, and they knew they were going to get significant dollars, and they even maybe supported you, and then all of a sudden, boom, it ended. They changed course. Let me ask you one other question along the same line. Your proposal was, after the mining was complete, to convert the property, if I recall correctly, into wetlands and a bog? It was to restore it in a natural manner. There would have been depressions there, which would have been made into bogs. Right. Now, isn't that ultimate disposition of the property inconsistent with the agricultural use? A bog is agriculture unless somebody is planting cranberries. Well, I don't know that it's inconsistent. If you look at the broad agricultural concept under the zoning laws in Maryland, I don't know. I'm a farmer, but I don't know that it's inconsistent. If somebody offered to convert your farm into a bog, you would probably think that's going to end my life as a farmer. I think you might have a point there, Your Honor, but I don't want to concede it. The government didn't say the problem with your proposal was you're going to convert it into a bog, and that doesn't qualify. They didn't say that. In fact, the court below says that. And the problem in this case is that we're dismissed on the complaint. I mean, basically, the court said below, you've not made a plausible bill of complaint, and therefore you're out. The record's never been produced in this case. Mr. Richard, we're mostly through the time you wanted to save for rebuttal. We'll give you two minutes back. Thank you. I'll get bogged down. You've got a good teacher. Mr. Bowen. Yes, Your Honor. May it please the Court. RCG asks this Court to hold on. Your basic theory in the brief is just wrong, isn't it? I mean, you may be right ultimately with the result, but your basic theory that the regulations here answer this question is wrong because the regulations make clear, do they not, that both sand and gravel and leasing is interest in real property. I hate to disagree with you, Your Honor, but we persist in our statements in the brief. To respond, first, under 32 CFR 736.1, when it comes to the disposal of real property, the Navy goes to the GSA's regulation. Is a lease a disposal of real property under the regulations? It is the only lease that is permitted by the statute. No, no, I'm not talking about the statute. I'm talking about the regulations. A lease is an interest in real property under the regulations, correct? Yes, a lease is an interest. Okay, so the regulations cannot answer the question because you have said, well, they say that sand and gravel is an interest in real property. True. But a lease is also an interest in real property, so this definition of real property within this statute we're dealing with can't be answered simply by looking at the regulations. I disagree. How could you disagree with that? You've just agreed that a lease is an interest in real property. So if you look at the regulations, the regulations prohibit the very lease that's permitted by the statute, right? The statute permits the lease, a lease which would continue it, subject to the other conditions of the statute. The statute, as was pointed out, maintains rural and agricultural and also includes an explicit prohibition on the disposal of any of the real property. And then the definition of real property includes embedded sand and gravel. Congress had a choice. The Senate version would have simply done away with the restriction on the Navy's ability to use this property. Instead, however, the House said, no, we want these restrictions. We want a restriction on the disposal of the real property containing the dairy farm, although we will permit it for leasing that maintains it in its rural and agricultural nature. So what you're saying, I gather, is that, A, if the statute had simply said lease, then mining would be contemplated as permissible, at least presumptive. Where we would disagree with that analysis is that where Congress wants to permit mining on federally owned and federally controlled land, it does so explicitly. Well, it typically does so explicitly, but suppose that it didn't. Suppose it simply said, you may lease the property. Then the question would be, leasing is not inherently inconsistent, right, with the disposition of the sand and gravel on the property? When it is done specifically to the very specified regulations in the Notice of Availability for Lease, yes. All right. Well, okay. And, well, go ahead. Okay. You can have a mineral lease, right? You can have a mineral lease. You have a whole statute which talks about that's a mineral leasing act. Correct. So the question is whether when this statute permitted leasing, it contemplated a lease for sand and gravel. That's the key question here. It's not that sand and gravel is an interest in real property, and therefore you can't dispose of real property, so you can't dispose of the sand and gravel. That doesn't get you anywhere. The question is when it says lease, does it mean a sand and gravel lease? No? We concur that when the issue before the court is whether when it says lease, does that implicitly allow a sand and gravel mining operation for a lease? Where we disagree is that we point to the language in the history of the statute which puts the restrictions and which goes the extra mile and says, and we are putting a prohibition on the disposal of the real property. Once you have taken the sand and gravel out of the real property, it's not going back. If you just want to lease it to have a dairy farm, five years later you can get up, leave the dairy farm, and the property is still there. You have not disposed of it. You might have disposed of it for five years through a lease, but it's still there when you come back, and that is what the statute explicitly contemplates. We would also direct this court's attention to the parallel army regulations in addition to the GSA regulations, which also continually define embedded sand and gravel as being part of the real property and say that when you want to dispose of them, you go to AR 405-90, which is entitled The Disposal of Real Property. Thus, the legislative history where Congress chose to enact the more restrictive statute plus the parallel regulations plus the actual controlling regulations indicate that a sand and gravel mining operation is simply not within the contemplation and is not permitted by the statute. Also, we would emphasize that the statute gives discretion to the Navy to lease out this property subject, however, to the restrictions contained within the lease. So, therefore, the Navy was not obligated to take the bid which would have given them the most, as is pointed out in the opposing counsels. That's kind of what happened. They didn't say we're going to give preference to dairy farming, so we're not going to give it to you. They said you're disqualified because this is disposal of real property within the meaning of the statute, right? Correct. That is what happened. Okay. So, do you agree that leasing the property for sand and gravel mining would maintain the rural and agricultural nature of the leased property? We disagree. Okay. What's your basis for, they say that under Maryland law, sand and gravel leases are agricultural. Is that correct? We don't know if it's correct. However, it's irrelevant. This is federal property. Thus, it would be governed by the federal statutes regarding what is going to be maintained. Okay. Well, how do we know for a matter of federal law what the meaning of rural and agricultural nature is? We would argue that the definition, we would look to the context of the statute and see the preference given to dairy farming and see that that clearly is not governed by agriculture. Also, one could look to other statutes governing leasing federal property for purposes of growing crops or purposes of grazing animals. And you could look to what the Supreme Court looked at in the Western Nuclear, where that was specifically about an agricultural lease and then they mined some of the sand and gravel. And the Supreme Court said, no, that's not permitted. You want leases for a very specific purpose. When you started digging down and taking out the embedded sand and gravel, you were doing something not contemplated under the lease. So that is how we would know that a sand and gravel strip mining operation that eventually turns into… What was the language of the lease in the Supreme Court case? The language of the lease… What case were you referencing? The Western Nuclear Inc., that was 462 U.S. 36. This was a case under the act that was at issue, was the Stock Racing Homestead Act. And then when the Department of the Interior leased out this land to Western Nuclear, when the Department of the Interior learned, however, that Western Nuclear had mined some of the embedded sand and gravel, they came back and said no. Okay, but what language were we doing? What was the language of the lease or the language of the statute that permitted certain activities? And… What was the lease? What was the sale? Okay, so the issue is that… Although the property had been disposed of under federal law, under federal law, including the Stock Racing Homestead Act, the minerals are typically reserved to the government. And so as a result, when they started digging down to extract the sand and gravel, the question arose, is that an extraction? Are you violating what has been reserved to the federal government? And the Supreme Court held that they were violating that. What's your position with respect to… Set aside the argument of bad faith, that is the second argument raised by the President of the Council. But suppose that this is a case in which the application had come in with no prior contact between the Navy and the Resource Conservation. And the Navy had just decided, no, we don't really want to have mining here. And suppose, further, that the statute did not dictate that there not be a non-agriculture slash rural use. Would that be a permissible determination that the Navy could make in the absence of statutory directive? Or would it be required to consider and ultimately award the lease to the highest bidder, in this case a bidder for a mining purpose? If we assume a statute that does not have the rural agricultural… You're assuming there's such a statute. We would say that the Navy's interpretation in rejecting a mineral lease would be correct and, in fact, required, although Judge Dyke disagrees, under the language of the prohibition on the disposal of real property. Okay, I'll set aside both the statute. Where I'm going with this is to try to see how much native discretion there is in the Navy to say, we have an array of applications here for a temporary use of the property. We have long-term interest in the property. And we're going to pick and choose according to what we think is in the best interest, ultimately, of us as the remaindermen for the property and the neighbors, for that matter. Can they make that determination? Is that within the scope of their permissible discretion? Yes, it is, Your Honor. And where do you go as a source for that proposition? I go to the language of the statute. And specifically, it says, Section A, 1, subject to Paragraph 2, which are the restrictions we have now excluded for purposes of the hypothetical. It says, the Secretary of the Navy may terminate or reduce the dairy or other operations conducted at the Naval Academy Dairy Farm, located in Gamberliss, Maryland. And then it says, B, in the lease authority, the Secretary of the Navy may lease the real property containing the dairy farm and any improvements to such persons under such terms as the Secretary considers appropriate. Thus, when we look at the statute itself, even taking away the restrictions, the statute gives the Navy the discretion to say what is going to be in best interest. My follow-up question is, if the Secretary had decided, in the exercise of my discretion, I don't want mining there, then that argument that you're making now would be the argument you'd be making for whatever its merits. But in this case, it's slightly different. The Secretary said, my hands are tied. The statute doesn't permit me to exercise discretion. You're out as a matter of statutory dictation, right? So does the discretion factor that would otherwise obtain fall away when the Navy is giving, as its reason, statutory compulsion? You understand my question? I do understand your question. Can we make that argument because you've already been saying that we are compelled. Exactly. I believe that that should still be a factor in this Court's determination because if this were to go back on remand, there's simply nothing that would guarantee that RCG would obtain the bid. The Navy has the discretion to lease it out under what terms it considers appropriate. But we don't have an affidavit or a statement from the responsible person of the Navy that if the statutory compulsion were removed, that the same result would have been, right? That is not on the record, yes. This comes to us, of course, on a very short record because it was dismissed on a plea. But to the extent that we have anything in the record, what does the record reflect about the contact between resource conservation and the Navy having to do with resource conservation's obtaining permission to go onto the property to test for the condition of sand and gravel? The record reflects the following. One, there is a letter from an entity that at the time was known as Cheney Reliable Joint Venture to the Navy in January saying, not specifically giving a lot of details, but simply saying, we have a history of safe operation. Thus, we're responding to the letter you sent out, looking if there was anyone interested. The second contact would be the RCG's application to go and mine on the property or to go and explore for the presence of sand and gravel. Right. Other than that... We don't have that, or do we? I don't think we have that. I do not believe the application or the approval of the application is in the record. It was not part of the complaint, and thus it is not in the record. Other than that... It's not in the record or it's not in the appendix? It's not in the appendix. Right, but it's in the record. It is in the record. Okay. Other than that, there are no other facts alleged about what contact is going on between the Navy and RCG. RCG in its complaint applies labels saying that, well, there was encouragement, there was this, there was that. However, under Iqbal and Twombly, this Court is only required to assume the facts as alleged, not the labels given to them. Additionally, the final contact, you could say, is that I believe that RCG was among the people who came on to the day when the Navy invited people to come on to the property. I see that my time has expired. Unless there are any further questions from the panel, we ask this Court to affirm the decision below. Thank you. Mr. Bowen, may I suggest that the next time you come before the Court, you not constantly gesticulate as if you're conducting an orchestra. It detracts from the persuasiveness of your argument. I'm sorry, Your Honor. Thank you. Mr. Rich has a little bit of bottle time, a couple minutes. The proposal, the specific proposal, I do not believe is in this record, is in the appendix. But part of the property was going to be farmed. I mean, mining was not going to take place throughout every inch of this property at all. It was only where the mining plan would show, and that's part of the reason I'm here is because I think this should be a decision made upon the record. That would show the areas that would be mined, the areas that would be reclaimed as bogs, areas that may be reclaimed as fields, and areas that would be part of the agricultural use. The other thing I would point out is that there is something in one of these appendices that indicates that the Department of Navy indicated that after the lease occurred, it would likely be subject to the local zoning laws. And I think that's fairly typical when you're dealing with federal enclaves. After there is a lease, and especially if it's a lease for a long-term period, if the local jurisdiction wants exerted zoning, the federal government would usually concur with that. So it would be subject and was likely to be subject in the amendment of the county for local zoning laws. So you're saying that in determining what rural and agricultural law, we should look to Maryland law rather than federal law? No, I'm not saying that. I'm just saying what I said, which is that it is likely that it would have been subject to local law. How do we figure out what rural agriculture means in this statute? I think the first thing is to see the actual mining plan and to look at the record. And the second thing is, I think that although I have not researched this issue, the federal law would probably apply at this point in time. So I do agree with the court's statement. Any final thoughts, Mr. Chairman? No, I appreciate the opportunity. Thank you. I'll take the case under advisement. All rise. The Honorable Court is adjourned.